# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 17-CV-1471 (JFB)
_____

CHRISTOPHER MCPHILLIPS,

Petitioner,

VERSUS

THE PEOPLE OF
THE STATE OF NEW YORK,

Respondent.
_____

**MEMORANDUM AND ORDER**
January 4, 2019
_____

JOSEPH F. BIANCO, District Judge:

Christopher McPhillips ("petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in the County Court of Suffolk County, State of New York. On September 28, 2012, petitioner was convicted after a jury trial of one count of rape in the first degree, two counts of criminal sexual act in the first degree, one count of sexual abuse in the first degree, and one count of unlawful imprisonment in the second degree. Petitioner was sentenced to twenty-five years' imprisonment on the crimes of rape in the first degree and two counts of a criminal sexual acts in the first degree, to be followed by twenty years' post-release supervision; a seven year determinate sentence for the crime of sexual abuse in the first degree, to be followed by fifteen years' post-release supervision; and a one year sentence for the crime of unlawful imprisonment. All the sentences and periods of post-release supervision are running concurrently.

In the instant habeas petition, petitioner challenges his sentence on the following grounds: (1) his statements to the complainant, Mary,[1] who was petitioner's adult neighbor and victim, about petitioner's prior incarceration, as well as his statements demonstrating his familiarity with police officers constituted inadmissible hearsay; (2) the People failed to prove his conviction beyond a reasonable doubt and the verdicts

---

[1] For the purpose of confidentiality, the Court refers to the victim only by her first name.

1

were against the weight of the evidence; (3) the People's rebuttal evidence was improperly admitted; and (4) his sentence was harsh and excessive. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Background

The following facts are adduced from the instant petition (Pet., ECF No. 1)[2] and the underlying record.

At about 1:40 p.m. on April 8, 2011, Mary walked into the laundry room in her apartment complex where she found petitioner. (T1. 342, 345-47.)[3] After a brief conversation, petitioner locked the door and brandished a knife. (*Id.* 346-50.) Mary testified at trial that petitioner then threatened her life if she did not comply with his requests. (*Id.* 355.) She also testified that petitioner ripped her shirt with the knife before forcibly raping and orally sodomizing her. (*Id.* 357-70.) Petitioner, while still wielding the knife, told Mary that he was going to kill her because he did not want to go back to prison. (*Id.* 365.) After Mary assured him that she was not going to tell anybody about the incident, petitioner ordered Mary to come to his apartment. (*Id.* 365, 370-73.) As soon as they walked out of the laundry room, Mary pushed petitioner and started screaming for help. (*Id.* 373.)

James Dawe, a resident of the apartment complex, testified that he saw Mary break free from petitioner as he was pulling her in the direction of his apartment. (*Id.* 85-94.) Dawe testified that he witnessed Mary running across the lawn toward Thomas Cuocco, a plumbing contractor whose company did work in the complex. (*Id.* 95-96.) Mary told Cuocco that she was just raped and asked him to call the police. Within five to ten minutes, the police arrived at the apartment complex. (*Id.* 136-38, 375-76.)

After questioning Mary and some witnesses, the police officers arrested petitioner outside his apartment. (*Id.* at 146-73.) Petitioner repeatedly asserted to arresting Officers Greg Tager and John Ingargiola that the encounter was consensual. (*Id.* 166, 171, 234.) Around 5:00 p.m., Mary was driven to the Good Samaritan Medical Center in West Islip for a sexual assault examination. (*Id.* 265-66.) Molly Philip, a laboratory technician in the DNA section of the Suffolk County crime laboratory, then conducted a series of tests of the samples taken during the examination. (T2. 26, 32.) Philip testified that the results for the presence of semen or saliva were either negative or inconclusive. (*Id.* 34-48.) No male DNA was present in either the vulvar swab or fingernail scrapings. (*Id.* 77, 81.)

B. Procedural History

On April 2, 2010, petitioner was indicted for: one count of rape in the first degree, in violation of N.Y. Penal Law § 130.35(1), a class "B" felony; two counts of criminal sexual acts in the first degree, in violation of N.Y. Penal Law § 130.50(1), class "B" felonies; one count of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65(1), a class "D" felony; and one count of unlawful imprisonment in the second degree, in violation of N.Y. Penal Law § 130.05(1), a class "A" misdemeanor, all in connection with petitioner's alleged rape, sexual misconduct,

---

[2] The Court uses the pagination assigned by the electronic case filing system when citing to case documents.

[3] Numbers in parenthesis preceded by "T1." refer to pages in the first half of the trial transcript (ECF No. 11-7.) "T2." refers to the second half of the trial transcript (ECF No. 11-8.)

and unlawful imprisonment of Mary. (Pet. 1.) Petitioner pleaded not guilty to all counts and charges.

*Wade* and *Huntley* hearings were held on April 17, 2012, May 3, 2012, and May 30, 2012, (ECF No. 11-6, 11-4, and 11-5.) The subject of these hearings was whether petitioner's statements to the police during his arrest and witness's identification of petitioner were admissible. The court found that both the oral statements and identification were admissible. (ECF No. 11-11 at 4-5.)

During trial, Maria Tonnesson, petitioner's half-sister, testified that, on April 8, 2011, she called petitioner soon after mistakenly receiving a text message from him with a photograph of petitioner's penis. She testified that petitioner had put the phone on speaker as he was doing laundry and Tonnesson could hear a yelling, upset female. (T2. 209-12.) Over defense counsel's objections, the court permitted the People's application for rebuttal, which consisted of Officers Ingargiola and Peter Barba stating that they had obtained and corroborated petitioner's phone number. (*Id.* 306-08, 310-11.) Barba also testified that no cell phones were recovered during the investigation. (*Id.* 311-12.) A records custodian at Sprint/Nextel then testified that call records for that number showed no incoming calls of the purported length during the relevant time period. (*Id.* 327, 335.)

On September 28, 2012, petitioner was convicted on all counts. On November 16, 2012, petitioner was sentenced to a concurrent term of twenty-five years' imprisonment followed by twenty years of post-release supervision.

1. Direct Appeal

Petitioner appealed his conviction to the Second Department of the New York State Appellate Division, arguing that: (1) his statements to Mary about not wanting to go back to prison constituted inadmissible hearsay; (2) his statements to officers evidencing prior criminal conduct and familiarity between petitioner and officers were unduly prejudicial and intended to demonstrate petitioner's propensity to commit the crimes charged; (3) the evidence was legally insufficient to support his conviction and the verdict of guilt was against the weight of the evidence; (4) the County Court improperly exercised its discretion in permitting the prosecution to present rebuttal evidence; and (5) his sentence was excessive.

In a decision and order dated November 18, 2015, the Second Department affirmed the trial court's judgment, holding that: (1) petitioner's claim that his statement to Mary constituted inadmissible hearsay was without merit under the party admission exception; (2) the County Court erred in allowing petitioner's statements evidencing his prior criminal conduct to be admitted into evidence and the prosecution failed to establish the relevancy of these statements in proving a material issue in the case, but the error was nevertheless harmless since "the evidence of defendant's guilt was overwhelming and there was no significant probability that the error contributed to his convictions"; (3) the evidence was legally sufficient to establish defendant's guilt beyond a reasonable doubt and the jury's verdict was not against the weight of the evidence; (4) the County Court did not abuse its discretion in permitting the prosecution to present rebuttal evidence; and (5) petitioner' sentence was not excessive. *People v. McPhillips,* 21 N.Y.S.3d 134 (2d Dep't 2015).

Petitioner applied for leave to appeal to the New York Court of Appeals, raising the same claims as those previously asserted before the Second Department. On May 6, 2016, petitioner's application was denied. *People v. McPhillips,* 27 N.Y.3d 1071 (2016).

2. The Instant Petition

On March 9, 2017, petitioner moved before this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet.) Petitioner contends that he is entitled to habeas relief on the following grounds: (1) his statements to the victim and arresting officers constituted inadmissible hearsay; (2) the People failed to prove his conviction beyond a reasonable doubt and the verdicts were against the weight of the evidence; (3) the People's rebuttal evidence was improperly admitted; and (4) his sentence was harsh and excessive.

On May 16, 2017, respondent filed its opposition on the basis that: (1) the trial court's evidentiary rulings did not deprive petitioner of a fair trial; (2) petitioner's claim that the verdict was against the weight of the evidence does not state a proper basis for relief; and (3) petitioner's sentence was within the limited allowed by New York state law and thus habeas corpus relief is not available. (ECF No. 11 – 1.) The Court has fully considered the parties' submissions, as well as the underlying record.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

4

established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

As set forth below, the Court concludes that all of petitioner's claims are without merit and, therefore, the petition is denied in its entirety.

A. Evidentiary Rulings

Petitioner argues that he was denied a fair trial when the state court allowed the introduction of certain statements. First, petitioner asserts that the trial court erroneously allowed the victim to testify that petitioner told her that he had to kill her because he feared that she would report the incident to police and that he said, "I'm not going back to prison." Petitioner also argues that the prejudicial impact of that statement was compounded by the admission of the statement between petitioner and the police officers indicating familiarity with one another (because they addressed each other by the first name), as well as the by portion of defendant's written statement that referenced he had recently been released from jail. (Pet. 7.)

The Appellate Division held that the statement to Mary about not wanting to go back to prison was admissible hearsay under the party admission exception. *McPhillips,* 21 N.Y.S.3d at 135. Conversely, the Appellate Division found that the County Court erred in allowing the other statements to be admitted into evidence since they were not relevant to a material issue in the case and their probative value did not outweigh the potential for unfair prejudice to petitioner; however, the Appellate Division found this error harmless as "the evidence of the defendant's guilt was overwhelming and there was no significant probability that the error contributed to his convictions." *McPhillips,* 21 N.Y.S.3d at 136.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir. 1983); *see also Estelle v. McGuire,* 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, a habeas petitioner can prevail on an evidentiary error claim only if "[he] show[s] that the error deprived [him] of a *fundamentally* fair trial." *Taylor,* 708 F.2d at 891 (emphasis in original); *see also Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir. 2004) ("[e]rroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial.'") (quoting *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in original). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunningan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)).

5

Under this standard, a denial of due process occurs when the erroneous admission of unfairly prejudicial evidence is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Id.* at 125 (quoting *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully,* 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant"). Moreover, in evaluating a potential due process violation, the Court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunningan*, 137 F.3d at 125 (quoting *Johnson*, 955 F.2d at 181). As set forth below, after carefully reviewing the trial record, the Court concludes that the evidentiary rulings raised by the petitioner do not warrant habeas relief in this case.[4]

As noted above, the Appellate Division held that the County Court erred in allowing these statements to be admitted because they were not probative to a relevant issue in the case, *see McPhillips*, 21 N.Y.S.3d at 136, but that such error was "harmless because the evidence of defendant's guilt was overwhelming and there was no significant probability that the error contributed to his convictions." *Id.* (citations omitted). This Court also concludes that the erroneous admission of these particular statements under New York law did not deprive petitioner of a fundamentally fair trial given the overwhelming nature of the evidence against him. The victim's detailed testimony regarding the rape was corroborated by the testimony of two individuals, James Dawe and Thomas Cuocco, who observed the victim as she emerged from the laundry room. Dawe testified that the victim was standing in front of petitioner and yelled, "[H]elp me, help me, he raped me." (T1. 92.) He further testified that the victim broke free from the appellant, who was holding on to her, and pulling her in the direction of his apartment. (*Id*. 93.) According to Dawe, after the victim pulled away, appellant yelled that the victim was nuts, and turned towards his apartment and ran. (*Id.* 94.) The victim then interacted with Cuocco, who testified that she was just raped and to call the police. (*Id*. 136.) Cuocco described the victim as distraught, upset, and really screaming. (*Id*. 135.) The victim also told the police about a distinctive bump on petitioner's penis. (*Id*. 376.) Moreover, the petitioner's guilt was further corroborated by his conduct with the police after the rape. For example, petitioner locked himself in his apartment, and would not come out when asked by the police and, during a telephone conversation with one of the police officers, petitioner stated that he was not in the apartment but rather was twenty minutes away. (*Id*. 166.) In addition, a few minutes later, petitioner stepped out of the apartment wearing different clothes and appearing to have just showered. (*Id*. 170, 231.) In short, in light of the entire record before the jury, this Court concludes that the erroneously admitted evidence was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125 (citations and quotations omitted).

---

[4] As a threshold matter, the Court agrees with the Appellate Division that the statement by petitioner to the victim referencing that he had been in jail was not inadmissible hearsay under New York law because it was admissible as an implied admission of guilt under the party admissions exception to the hearsay rule. *See People v. Nealy*, 32 A.D.3d 400, 402 (2d Dep't 2006).

However, the Appellate Division then concluded that this statement to the victim, as well as the statements to the police demonstrating his familiarity with them and acknowledging he had recently been in jail, were erroneously admitted because "the prosecutor failed to establish that any of the comments were relevant to a material issue in the case." *McPhillips*, 21 N.Y.S.3d at 136.

Finally, petitioner contends that the trial court erred when it permitted the People to present rebuttal evidence to contradict Tonnesson's testimony at trial regarding an alleged phone call between her and petitioner. Petitioner claims that such rebuttal evidence was improper as it did not counter the affirmative fact that the conversation occurred, but only rebutted the fact that it occurred on the same cell phone number given to Officers Barba or Ingargiola. (Pet. 12.) This Court also concludes that this ruling does not provide a basis for habeas relief in this case.

As an initial matter, there is no basis to conclude that the trial court's evidentiary ruling or the Appellate Division's affirmance thereof was erroneous under state law. *See People v. James*, 727 N.Y.S. 2d 900, 902 (2d Dep't 2001) ("In the exercise of its sound discretion, the trial court may permit either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party's original case.") (citing *People v. Harris*, 648 N.Y.S. 2d 620 (1996)). Here, petitioner had endeavored to prove that a phone call occurred between petitioner and Tonnesson. The People presented evidence to rebut a claim about the existence of the call by demonstrating that no such call was made from petitioner's phone. The court was well within its own discretion under state law to allow such rebuttal evidence. *See Harris*, 648 N.Y.S. 2d at 621 ("[i]n the interest of justice, the court may permit either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party's original case.") (citing CPL 260.30(7)).

In any event, even assuming *arguendo* that the ruling was erroneous, the overwhelming evidence (discussed *supra*) makes clear that the admission of this evidence did not rise to a constitutional level that deprived him of a fair trial. In sum, none of the petitioner's evidentiary claims (either individually or collectively) warrant habeas relief in this case.

B. Legal Sufficiency and Weight of the Evidence

Petitioner's second claim is that his conviction in state court was against the weight of the evidence, while also challenging the legal sufficiency of the evidence supporting his conviction. It is well established that weight of the evidence and legal sufficiency are two distinct claims, each requiring a discrete analysis. *See People v. Bleakley*, 69 N.Y.2d 490, 495 (1987).

In a weight of the evidence claim, "[e]ven if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.'" *Id*. (quoting *People ex rel. MacCracken v. Miller*, 291 N.Y. 55, 62 (1943)).

Conversely, in a legal sufficiency claim, "the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis." *Bleakley*, 69 N.Y.2d at 496 (citing *Cohen v. Hallmark Cards*, 45 N.Y.2d 493, 499 (1978)).

7

The law is clear that a "weight of the evidence" claim is based on state law. *See, e.g., Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.") (citations omitted). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). Therefore, to the extent petitioner raises a weight of the evidence claim under state law, the Court cannot review it.[5]

This Court, however, can review petitioner's legal sufficiency claim and finds such claim without merit. On appeal, the Appellate Division held that "[v]iewing the evidence in the light most favorable to the People, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence, we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor." *McPhillips,* 21 N.Y.S.3d at 136 (internal citations omitted). As set forth below, having carefully reviewed the record, this Court concludes that this determination by the state court regarding the sufficiency of the evidence was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented at trial.

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. *See Einaugler v. Supreme Court of the State of N.Y.,* 109 F.3d 836, 839 (2d Cir. 1997) ("The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." (quoting *In re Winship*, 397 U.S. 358, 364 (1970))). As here, when a federal court considers the sufficiency of the evidence of a state conviction, it "must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999).

However, a petitioner "bears a very heavy burden," *Einaugler,* 109 F.3d at 840 (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)), and a "state criminal conviction will be upheld only if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis,* No. 04-CV-0856(JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)); *see also Policano v. Herbert,* 507 F.3d 111, 115 -16 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554 [,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)).

Further, even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v.*

---

[5] The Court notes that the Appellate Division rejected this claim on the merits, holding that the verdict was not against the weight of the evidence. *McPhillips*, 21 N.Y.S.2d at 136.

*Robinson,* 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge,* 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker,* 41 F.3d 825, 830 (2d Cir. 1994)).

In the instant petition, petitioner seeks to challenge the legal sufficiency of the evidence by pointing to insufficient DNA evidence on the victim's body, suggesting that if there had been an encounter, it most likely did not involve a forcible compulsion. Petitioner also claims that the record is inaccurate. Specifically, petitioner claims that Mary's shirt was ripped before she entered the laundry room, and that petitioner was not pointing a knife at her back outside the laundry room. Finally, petitioner argues that the evidence did not prove he placed the victim in fear of immediate death or serious physical injury. (Pet. 9.)

By raising all these arguments, petitioner again attacks the credibility of the victim as a witness, and the proper forum for such a challenge is in trial through "cross-examination and in subsequent argument to the jury, not in an appellate brief." *United States v. Roman,* 870 F.2d 65, 71 (2d Cir. 1989) (quoting *United States v. Friedman,* 854 F.2d 535, 558 (2d Cir.1988)). The victim testified at trial on all these issues and described in detail how petitioner threatened her with a knife, ripped her shirt, and attempted to force her to go back to his apartment. The jury had the opportunity to evaluate the credibility of the victim as a witness, and it is well established that this Court should not "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman,* 870 F.2d 65, 71 (2d Cir. 1989)*,* nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara,* 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)); *see also United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993). Therefore, "the role of this Court is clear" as it is "not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony." *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993)). Moreover, as discussed *supra*, there was overwhelming evidence corroborating the victim's testimony. In sum, petitioner's claim that his conviction is legally insufficient is meritless.

C. Harsh and Excessive Sentence

As noted above, petitioner was sentenced to twenty-five years' imprisonment on the crimes of rape in the first degree and criminal sexual act in the first degree to be followed by twenty years' post-release supervision, a seven year determinate sentence for the crime of sexual abuse in the first degree followed by fifteen years' post-release supervision, and a one year sentence for the crime of unlawful imprisonment. All the sentences and periods of post-release supervision run concurrently. (ECF No. 11-1 at 18.) Petitioner now contends that the sentence imposed is harsh and excessive due to the disparity between the sentence offered during plea negotiations (*i.e.*, eight years) and the sentenced ultimately imposed. Petitioner claims that this inconsistency suggests he was punished for exercising his constitutional right to a jury trial. (Pet. 13.) Petitioner's claim is without merit.

Under New York Penal Law, the maximum determinate sentence permitted for a conviction for rape in the first degree, a class

"B" violent felony, is twenty-five years' imprisonment. N.Y. Penal Law § 70.02(3)(a). However, "[i]n 1998, the New York Penal Law was amended to provide that individuals who committed felonies after September 1, 1998, and who were sentenced to a determinate sentence of incarceration, would also receive a *mandatory* term of post-release supervision." *Van Gorden v. Superintendent*, No. 9:03-CV-1350, 2007 WL 844901, at *10 (N.D.N.Y. Mar. 19, 2007) (citing N.Y. Penal Law § 70.45(1) (emphasis in original)). Moreover, "the statute is quite clear that the periods of post-release supervision are *mandatory* and are *in addition to* the determinate sentence of incarceration imposed." *Id*. (emphasis in original). Under N.Y. Penal Law § 70.45 (2-a)(c), periods of post-release supervision for a class B felony sex offense shall be no less than five years and no more than twenty years.

Thus, the law allows the court to impose a maximum sentence of twenty-five years' incarceration for a class "B" violent felony followed by a mandatory period of post-release supervision ranging from five to twenty years. Petitioner's sentence of twenty-five years' imprisonment with twenty years' post-release supervision falls within this statutorily prescribed range. The sentences on the other counts similarly were within the statutorily prescribed range. Thus, there is no basis for habeas relief. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (for the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law"); *see also Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law."); *McCalvin v. Senkowski,* 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski,* 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (dismissing excessive sentence claim where petitioner's sentence fell within the statutorily prescribed range.). Therefore, because petitioner's sentence does not exceed what is permissible by law, there is no federal question for habeas review. [6]

In addition, "it is well settled that a sentence within a state statutory range does not present a constitutional issue simply because a defendant was presented with a better offer before trial." *Plato v Poole*, 06 CIV. 6559BMC, 2008 WL 222667, at *4 (E.D.N.Y. Jan. 25, 2008) (citing *White*, 969 F.2d at 1383). The mere fact that the sentencing judge imposed a greater sentence than the one offered during plea negotiations by the prosecutor does not provide a basis for habeas relief. Accordingly, as petitioner's sentence fell within the statutorily prescribed range and the mere existence of a better offer during plea negotiations is insufficient to raise a constitutional issue, there is no basis for habeas relief on these grounds.

IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

---

[6] To the extent petitioner claims that his sentence is cruel and unusual punishment under the Eighth Amendment, the Court rejects such a claim on this same basis. In any event, the Court finds no basis to conclude that petitioner's sentence of twenty-five years' imprisonment with twenty years' post-release supervision is grossly disproportionate to the crime committed so as to violate his Eighth Amendment rights given the nature of his criminal activity in this case.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purposes of any appeal. *See Coppedge v. United* States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: January 4, 2019
Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*. Respondent is represented by Edward A. Bannan, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.